IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA          :

:

    v.                        : Criminal Case No. DKC 11-0686

:

KEVIN WALKER              :

:

**MEMORANDUM OPINION**

Kevin Walker filed motions for compassionate release under 18 U.S.C. § 3582(c)(1)(A) based on the "extraordinary and compelling reasons" presented by his vulnerability to COVID-19. (ECF Nos. 485; 488).[1]  He is currently serving a 192-month[2] sentence at FCI Allenwood Medium as a result of his conviction for conspiracy to distribute and possess with intent to distribute

---

[1] The initial motion and supplement were filed pro se.  The contents of that material may suggest that they were prepared by someone other than Mr. Walker.  As will be discussed further, the intellectual disability described in the report provided at the time of sentencing and relied on by counsel at this time is inconsistent with other evidence of Mr. Walker's functional ability.  Because the undersigned did not preside over Mr. Walker's case at the time of original sentencing, the court cannot personally assess his capabilities.

[2] He initially received a 240-month sentence.  The sentence was reduced on December 22, 2016, based on a retroactive application of a lowered guideline range.  Although he was determined to qualify as a career offender, the offense level calculated without that enhancement was higher, and his criminal history category based on points was VI, again without reference to the career offender calculation.  Thus, the career offender designation did not affect the guidelines.

controlled substances.   Mr. Walker has been incarcerated since November 10, 2011, which counsel asserts is more than 60% of the time he would be required to spend in the custody of the Bureau of Prisons ("BOP").   According to the BOP website, his projected release date is December 29, 2025.[3]   For the following reasons, the motion for compassionate release will be denied.

Ordinarily, "[t]he court may not modify a term of imprisonment once it has been imposed[.]" 18 U.S.C. § 3582(c) (2018).   This general rule is subject to certain exceptions, including the compassionate release provision, which allows the BOP to seek a modification of a prisoner's sentence.   *See id*. § 3582(c)(1)(A).  Under the First Step Act of 2018, the compassionate release provision was modified to allow prisoners to seek a sentencing reduction directly from the court.   The provision now provides, in relevant part, that:

> The court may not modify a term of imprisonment once it has been imposed except that—
>
> (1)  in any case—
>
> (A)  the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such

---

[3] The motions to seal (ECF Nos. 489; 492; 494) are GRANTED. The personal medical and other information should remain private, except as recited herein.

a request by the warden of the defendant's
facility, whichever is earlier, may reduce the
term of imprisonment (and may impose a term of
probation or supervised release with or
without conditions that does not exceed the
unserved portion of the original term of
imprisonment), after considering the factors
set forth in section 3553(a) to the extent
that they are applicable, if it finds that—

(i) extraordinary and compelling
reasons warrant such a reduction; or

(ii) the defendant is at least 70 years
of age, has served at least 30 years in prison,
pursuant to a sentence imposed under section
3559(c), for the offense or offenses for which
the defendant is currently imprisoned, and a
determination has been made by the Director of
the Bureau of Prisons that the defendant is
not a danger to the safety of any other person
or the community, as provided under section
3142(g);

and that such a reduction is consistent with
applicable policy statements issued by the
Sentencing Commission[.]

Judge Hollander described the next step of the analysis:

Accordingly, in order to be entitled to relief
under 18 U.S.C. § 3582(c)(1)(A)(i), a defendant must
demonstrate that (1) "extraordinary and compelling
reasons" warrant a reduction of the sentence; (2) the
factors set forth in 18 U.S.C. § 3553(a) countenance a
reduction; and (3) the sentence modification is
"consistent" with the policy statement issued by the
Sentencing Commission in U.S.S.G. § 1B1.13.

U.S.S.G. § 1B1.13 is titled "Reduction in Term of
Imprisonment under 18 U.S.C. § 3582(c)(1)(A) Policy
Statement." The text mirrors the statute. Application
Note 1 of U.S.S.G. § 1B1.13 defines "Extraordinary and
Compelling Reasons" in part as follows (emphasis added):

1. Extraordinary and Compelling Reasons.
Provided the defendant meets the requirements

3

of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:

(A) Medical Condition of the Defendant.—

(i) The defendant is suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (*i.e.*, a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

(ii) The defendant is—

**(I) suffering from a serious physical or medical condition**,

(II) suffering from a serious functional or cognitive impairment, or

(III) experiencing deteriorating physical or mental health because of the aging process,

that **substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility** and from which he or she is not expected to recover.

Other extraordinary and compelling reasons include the age of the defendant (Application Note 1(B)) and Family Circumstances (Application Note 1(C)). Application Note 1(D) permits the court to reduce a sentence where, "[a]s determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." U.S.S.G. § 1B1.13 App. Note 1(D).

The BOP regulation appears at Program Statement 5050.50, Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 2582 and

> 4205.    The Guideline policy statement in U.S.S.G. §
> 1B1.13, along with the application notes, and BOP
> Program Statement 5050.50 define "extraordinary and
> compelling reasons" for compassionate release based on
> circumstances involving illness, declining health, age,
> exceptional family circumstances, as well as "other
> reasons."
>
>       On March 26, 2020, Attorney General William Barr
> issued a memorandum to Michael Carvajal, Director of the
> BOP, directing him to prioritize the use of home
> confinement for inmates at risk of complications from
> COVID-19.   *See Hallinan v. Scarantino*, 20-HC-2088-FL,
> 2020 WL 3105094, at *8 (E.D.N.C. June 11, 2020).   Then,
> on March 27, 2020, Congress passed the Coronavirus Aid,
> Relief, and Economic Security Act (the "CARES Act"),
> Pub. L. No. 116-136, 134 Stat. 281.   In relevant part,
> the CARES Act authorized the Director of BOP to extend
> the permissible length of home confinement, subject to
> a finding of an emergency by the Attorney General.   *See*
> Pub.  L.  No.  116-136,  §  12003(b)(2).     The Attorney
> General issued a second memorandum to Carvajal on April
> 3, 2020, finding "the requisite emergency . . . ."
> *Hallinan*, 2020 WL 3105094, at *9.   Notably, the April 3
> memorandum "had the effect of expanding the [BOP's]
> authority to grant home confinement to any inmate...."
> *Id.*
>
>       The Department of Justice ("DOJ") has recognized
> the unique risks posed to inmates and BOP employees from
> COVID-19.   The DOJ recently adopted the position that an
> inmate who presents with one of the risk factors
> identified by the CDC should be considered as having an
> "extraordinary and compelling reason" warranting a
> sentence reduction.   *See also* U.S.S.G. § 1B1.13 cmt.
> n.1(A)(ii)(I).

*United States v. Kess*, No. 14-cr-480-ELH, 2020 WL 3268093, at *3–

4 (D.Md. June 17, 2020) (footnote omitted).

 Mr. Walker argues that he meets the "extraordinary and

compelling reasons" because his underlying medical conditions

(asthma, type 2 diabetes, hypertension, obesity, hyperlipidemia,

and hypothyroidism) and age (50) make him especially vulnerable to COVID-19.   He asserts that he does not pose a danger to the community, and the § 3553(a) factors warrant release.   He notes that most of his criminal history for drug offenses and petty theft results from his long-standing struggle with drug addiction, he has no history of drug related violence or weapon possession, and the offense of conviction, while serious, did not involve violence or weapons.   He accepted responsibility at the outset, and, while he was the leader of the conspiracy, has already served much longer than any of the others involved.   Despite his long criminal history, the longest he had served previously was 18 months.   Judge Titus noted his intellectual disability at the time of sentencing. He has an IQ of 63 and difficulty reading and writing. Nevertheless, he has taken more than two dozen educational and vocational courses and has worked in several capacities.   Although he made efforts, he has not completed his GED.   The records show that he has had some drug treatment, although non-residential.   He has family and community support, and proposes to live with extended family upon release and seek employment in the food service industry.

The Government opposes release, arguing that although he suffers from medical conditions that make him eligible for consideration given the COVID-19 health emergency, his release would present a danger to the community and is not warranted under

the § 3553(a) factors.   It points to his "decades of nearly uninterrupted criminal activity," including conspiracy, drug distribution, theft, assault, fleeing, and disorderly conduct.  It finds most troubling his convictions for second degree assault involving domestic abuse.  Accordingly, because he has only served 61% of his sentence and is housed at a facility where no inmate has tested positive, it opposes early release.

In his reply, Mr. Walker rightly points out that the absence of positive cases at Allenwood is no guarantee for the future and does not negate the showing of extraordinary and compelling reasons.  He also seeks to downplay his criminal history, pointing out the age of some of those convictions.

By far the biggest concern is whether Mr. Walker, given his developmental disabilities and extraordinary criminal history, will revert to his old ways upon release, or whether this prosecution and the term of imprisonment already served has broken that pattern sufficiently to enable him to lead a different life. The goals of punishment and general deterrence are of less significance.  He does appear to have attempted to take advantage of the programming available to him, but has made little concrete progress in terms of literacy and training.  Apparently, he has incurred no disciplinary infractions while incarcerated.  He has had some substance abuse treatment, but not RDAP.  Particularly given the current public health crisis and its impact on BOP

programming, there is little likelihood that any progress can be made while incarcerated.  It is difficult to square his leadership of a large drug conspiracy with the neuropsychological report prepared prior to sentencing, and he is apparently able to navigate in the prison setting.  His release plan is somewhat vague, does not even identify the location of his proposed residence, and there is little structure in the proposal.  Moreover, while his several health problems would present a significant risk if he becomes infected with COVID-19, release does not guarantee that there will be no exposure in the community and someone who lacks the skills to navigate independent living well may not take the appropriate steps to protect himself and others.  His history of domestic assaults is particularly troubling when the entire community is forced to remain inside residences as much as possible.  As a result, he has not shown that he would not be a danger to the community if released and the § 3553(a) factors do not warrant release at this time.

Accordingly, the motion for compassionate release will be DENIED.

/s/
DEBORAH K. CHASANOW
United States District Judge
